USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PABLO RAVAZZANI,

Plaintiff,

-against-

C K COLLECTION, INC.; KAL RIEMAN, INC.,

Defendants.

24 Civ. 9673 (AT)

**ORDER**

ANALISA TORRES, District Judge:

This action involves a copyright dispute between Plaintiff, Pablo Ravazzani, a photographer, and Defendant Kal Rieman, Inc., a fashion apparel company. *See generally* First Amended Compl. ("FAC"), ECF No. 40. Plaintiff and Defendant, Kal Rieman, cross-move for summary judgment. *See* Def. Mem. I, ECF No. 208; Pl. Mem. I, ECF No. 215; Def. Mem. II, ECF No. 219; Pl. Mem. II, ECF No. 222. For the reasons stated below, Defendant's motion is GRANTED IN PART and DENIED IN PART, and Plaintiff's cross-motion is DENIED.

**BACKGROUND**

I. Factual Background

Plaintiff, Pablo Ravazzani, is a professional freelance photographer. Def. 56.1 ¶ 1, ECF No. 218.[1] Defendant Kal Rieman is "a New-York-based wholesale retail company and women's ready-to-wear designer that launched the KAL RIEMAN collection in 2010." *Id.* ¶ 2. On June 9, 2023, Defendant hired Plaintiff to conduct a photoshoot of models wearing Kal Rieman-branded apparel. *Id.* ¶ 5. Defendant paid Plaintiff $1,500, and, in exchange, Plaintiff granted Defendant a license to use the photographs on its website and social media platforms for a period

[1] Citations to Defendant's Rule 56.1 statement includes Plaintiff's responses, and citations to Plaintiff's Rule 56.1 statement includes Defendant's responses.

of two years. *Id.* ¶¶ 6–7, 10; *see* Pl. 56.1 ¶ 4, ECF No. 220; Invoice & Licensing Agreement at 1, ECF No. 216-2. The agreement states that "[u]se of the photograph(s) . . . is strictly limited to the use, medium, period of time, . . . and any other restrictions specified in the invoice"; "[n]o other uses shall be allowed without prior, written provision"; and "[d]istribution to and use by third parties is prohibited." Invoice & Licensing Agreement §§ 1, 5.

In March and April 2024, Plaintiff discovered his photographs on websites operated by retailers to whom he did not license the photographs. *See* Pl. 56.1 ¶ 6. Plaintiff is the sole author of the photographs at issue, and he registered his copyrights in and to the photographs with the U.S. Copyright Office, effective April 6, 2024. *See id.* ¶ 32. On May 20, 2024, Plaintiff emailed Defendant's owner, Cally Rieman ("Rieman"), a list of websites on which he had found his photos to "check if [she] gave these retailers the photographs and permission to use them." *Id.* ¶ 7. On June 19, 2024, Rieman responded that she had reached out to her sales director to ask the two stores she recognized from Plaintiff's list about the photographs but continued that "[n]o one was authorized to use these photos" and "[t]his is not in my control as the internet has no guard against people doing this." *Id.* ¶ 8. At all relevant times, Defendant's website included a "Terms of Service" covering content use. *See* Def. 56.1 ¶ 4. Section 12 prohibits visitors from using the sites or its contents "for any unlawful purpose" or to "infringe upon or violate . . . [Defendant's] intellectual property rights or the intellectual property rights of others." *Id.* Defendant received no "kickback" or royalty benefit based upon sales by the retailers involved in this lawsuit. *See id.* ¶ 15.

Plaintiff does not claim that Defendant displayed Plaintiff's photos on its own website or social media accounts after the expiration of the two-year license term. *See id.* ¶¶ 12–13. Plaintiff argues, however, that Defendant either distributed photos to retailers Paul Simon Co.

("Paul Simon"), Same Blue Dress LLC d/b/a "Carriage House" ("SBD"), Kathryn's Collection, Inc. ("KCI"), and Mosley & Company d/b/a Carl Meyers ("Mosley") (collectively, the "retailers") or authorized them to copy photos from Defendant's website. *See* Pl. 56.1 ¶ 29; *see also* Pl. Claims Chart, ECF No. 216-1. Plaintiff has not prepared "sales reports or revenue projections" with respect to the photographs at issue, and no damages expert has been retained or disclosed. *See* Def. 56.1 ¶ 16. The Court next examines Plaintiff's allegations with respect to each retailer.

A. Paul Simon

Plaintiff argues that Defendant is liable for contributory copyright infringement in connection with Paul Simon's publication of five of his photos. *See* Pl. Claims Chart at 13–47. On June 19, 2024, Plaintiff emailed Rieman, notifying her of a Paul Simon social media post, "liked" by Defendant's Instagram account and dated July 28, 2023, publishing these photos. Pl. 56.1 ¶ 9. Rieman replied, stating, "I did not authorize or provide Paul Simon with any images to post on Instagram. It is very easy to screenshot an image from any site and use it. The internet is a public space in which anyone can access those images. I am not responsible for their actions." *Id.* ¶ 10. In response to Plaintiff's interrogatories, Paul Simon stated that Defendant "made the photographs . . . available to [Paul Simon] in or around fall/winter 2022 and/or spring/summer 2023 through [Defendant's] lookbook and/or through its website or other means o[f] communication." Paul Simon Interrogs. at 6, ECF No. 216-8.

B. SBD

By visiting the SBD's website on March 31 and April 7, 2024, Plaintiff discovered that SBD published fifty-eight of his photos, thirteen of which had been published as of March 31. *See* Pl. 56.1 ¶¶ 15–17. Plaintiff argues that Defendant was a direct infringer with respect to three

of the photos and a contributory infringer with respect to the remaining photos. *See* Pl. Claims Chart at 2–13.

In responses to Plaintiff's interrogatories, SBD stated that Rieman "made the photographs . . . available . . . to SBD in or around summer/fall 2023 by allowing SBD to access the photographs from [Defendant's] website." *Id.* ¶ 19; SBD Interrogs. at 5, ECF No. 216-15. The record contains emails of past communications between SBD and Rieman discussing the sharing of e-commerce photos, although none pertain to Plaintiff's photographs specifically. For example, in September 2020, Defendant's sales director, Tami Trella, exchanged emails with an SBD employee about sharing images of Defendant's apparel, *see* ECF No. 216-16 at 2, 11–12, and in April 2021 and October 2022, Trella shared Defendant's "lookbook" with SBD employees via email, *see id.* at 3–4, 8. *See also* Pl. 56.1 ¶ 28. Defendant does not dispute that it would "routinely communicate with retailers to answer questions concerning items offered for sale on [its] website or in . . . [its] 'look[]book.'" *Id.*

C. KCI

On June 19, 2024, KCI's website displayed six of Plaintiff's photos. *See id.* ¶ 22; Kleinman Decl. ¶ 10, ECF No. 216. Plaintiff argues that Defendant directly infringed on his copyright in and to the photos. *See* Pl. Claims Chart at 2. KCI states in its response to Plaintiff's interrogatories that although it "has been unable to locate the email transmission of the [p]hotographs from 2023," "based on its custom and practice with [Defendant]," and its May 8, 2023 "request for the [p]hotographs sent to" Trella, KCI "believe[s]" the photographs "would have been transmitted via email . . . sometime between June 9, 2023 and July 31, 2023." KCI Interrogs. at 5, ECF No. 216-10; *see also* ECF No. 216-12 (May 8, 2023 email from a KCI employee to Trella, in which KCI asked for "high res advertising quality images" for one of the

blouses it purchased from Defendant). And, although it is unclear whether this request pertained to Plaintiff's photos, in an email exchange on February 1, 2024, a KCI employee requested "ecomm" photos from Trella; in response, Trella said that Rieman said KCI could "get [the photos] right from her website." Pl. 56.1 ¶ 31; *see* ECF No. 216-11.

D. Mosley

Mosley's website displayed eighteen of Plaintiff's photos. *See* Pl. 56.1 ¶ 26. In response to Plaintiff's interrogatories, Mosley states: "[D]uring meetings in or around summer/fall 2023 with . . . Trella . . . we were given express permission to access and use [the relevant photographs] by directly saving the image from [Defendant's] website . . . and to use them on Mosley's website for the corresponding item." *Id.* ¶ 27; *see* Mosley Interrogs. at 3, ECF No. 216-18. Plaintiff does not claim that the photos were first published after his copyright registration and argues that Defendant is liable only for contributory and not direct infringement. *See* Pl. Claims Chart at 14–17.

II. Procedural Background

On December 16, 2024, Plaintiff brought this copyright infringement action against thirteen retailers (Shop PO, LLC; Rue Gilt Groupe, Inc.; John Doe d/b/a Linz Shop; KCI; O'Connell's Clothing; SBD; Paul Simon; The Sophia Lustig Shop, Inc.; Deborah Kent's, Inc.; Mosley; C K Collection, Inc.; Osmon, Urrutia LLC; and HDHA, LLC d/b/a The Wardrobe Consultant). *See* Compl., ECF No. 1.[2] On February 25, 2025, Plaintiff amended his complaint, adding Kal Rieman as a defendant. *See* FAC. With respect to Defendant, the amended complaint pleads one count of copyright infringement under 17 U.S.C. § 106, alleging that

[2] Ravazanni is not asserting claims against Defendant in connection with the uses of the photographs by the following co-defendants: Shop PO, LLC; Rue Gilt Groupe LLC; SwapRetail, Inc. d/b/a Linz Shop; O'Connell's Clothing; HDHA, LLC d/b/a The Wardrobe Consultant; Deborah Kent's Inc.; 124 Tenth Street, LLC d/b/a Sophia Lustig; Osmon Urrutia, LLC d/b/a Sabot's; and CK Collection, Inc. *See* Pl. Mem. I at 1 n.1.

Defendant "provided, distributed and/or made Plaintiff's [p]hotographs freely available to other defendants for further copying, publication, and use on their respective websites, in violation and beyond the scope of the original license granted to [Defendant]." *Id.* ¶ 51; *see also id.* ¶¶ 46–58.

Relevant here, Paul Simon, SBD, KCI, and Mosley each brought cross-claims against Defendant asserting that any infringement from their publication of Plaintiff's photos was attributable to Defendant, who ultimately authorized use of the images; Paul Simon, SBD, and KCI have voluntarily withdrawn their respective crossclaims. *See* ECF Nos. 76, 88, 90, 127, 200, 203, 206; *see also* Pl. 56.1 ¶¶ 13, 21, 24. Since filing his amended complaint, Plaintiff has dismissed his claims against all defendants except Defendant and one other defendant, who defaulted, and no other claims or crossclaims remain pending against Defendant. *See* Def. 56.1 ¶ 1 (citing ECF Nos. 131, 136, 149, 152, 154, 158, 174–75, 188–89, 203–06).

**DISCUSSION**

I. Summary Judgment Standard

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247 (emphasis in original). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict" for the nonmovant. *Id.* at 248.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact by citing specific evidence in the record. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477

U.S. at 323; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). But, if the nonmovant bears the burden of proof at trial, the movant may satisfy its initial burden by demonstrating that the nonmovant cannot produce admissible evidence to support the existence of a triable issue of material fact. *See Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the movant meets its initial burden, the burden shifts to the nonmovant to establish a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant and draws all factual inferences in the nonmovant's favor. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997).

"[E]ven when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter a judgment for either party." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.*

## II. Evidentiary Issues

In opposition to Defendant's motion and in support of his cross-motion for summary judgment, Plaintiff cites interrogatory responses from retailers Paul Simon, KCI, SBD, and Mosley, former co-defendants who have since settled their claims with Plaintiff. Defendant argues that the Court should not consider the interrogatory responses. The Court agrees.

Under Federal Rule of Civil Procedure 56, "[a] party asserting that a fact cannot be or is genuinely disputed [may] support the assertion by . . . citing to . . . interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). Courts in this Circuit have held, however, that where interrogatory

responses are not verified, as required by Rule 33(b)(3), they cannot be relied upon in supporting or opposing summary judgment. *See, e.g.*, *Chen v. Shanghai Cafe Deluxe, Inc.*, No. 17 Civ. 2536, 2019 WL 1447082, at *10 (S.D.N.Y. Mar. 8, 2019); *United States Equal Emp. Opportunity Comm'n v. Hunter-Tannersville Cent. Sch. Dist.*, No. 21 Civ. 352, 2026 WL 493945, at *13 (N.D.N.Y. Feb. 23, 2026); *see also* Fed. R. Civ. P. 33(b)(3) (requiring that "[e]ach interrogatory must . . . be answered . . . under oath"). Here, Paul Simon's interrogatory responses are not signed under the penalty of perjury. *See* Paul Simon Interrogs. at 30–31 (including only a certification of service, without a signed verification). The Court, therefore, does not consider them.

Next, although verified, the Court does not consider KCI's, SBD's, and Mosley's interrogatory responses because they are inadmissible against Defendant. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."). "[T]he interrogatory answers of one defendant are not admissible against another defendant, unless those answers are covered by an exception to the hearsay rule." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 149 (D. Conn. 2009); *cf. Int'l Bus. Machines Corp. v. BGC Partners, Inc.*, No. 10 Civ. 128, 2013 WL 1775367, at *8 n.8 (S.D.N.Y. Apr. 25, 2013) (explaining that a party may not rely on statements from its own answers to interrogatories because those statements would be inadmissible hearsay). Plaintiff effectively concedes that the interrogatory responses are inadmissible hearsay not subject to an exception[3] but argues that "a representative

[3] With respect to Plaintiff's brief reference to the residual exception, *see* Pl. Mem. I at 23 (citing Fed. R. Evid. 807), the Court agrees with Defendant that given the retailers' pending cross-claims against Defendant at the time they responded to the interrogatories, their responses, carefully crafted by their attorneys, lack the "circumstantial guarantees of trustworthiness" required for admissibility under this exception. Def. Mem. II at 11 (quoting *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 167 (3d Cir. 1995)).

of each [former] co-defendant *could be* called to testify at trial regarding their respective interrogatory responses." Pl. Mem. I at 23 (emphasis in original). Plaintiff is correct that if evidence "could readily be reduced to admissible form at trial," "it may be considered on a motion for summary judgment," *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order). However, Plaintiff, who took no depositions, has not shown that the interrogatory responses can be readily reduced to admissible testimony at trial. He does not, for example, identify the relevant corporate representatives, state where they are located,[4] or detail what they would say (and whether their testimony, in turn, would be admissible). The Court, therefore, does not consider the interrogatory responses, which are inadmissible hearsay.

III. Merits Analysis

A. Legal Framework

1. Direct and Contributory Copyright Infringement

To prevail on a claim of copyright infringement, Plaintiff must show that (1) he "ha[s] a valid copyright in the work allegedly infringed," and (2) "the defendant infringed the plaintiff's copyright by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder." *Island Software & Computer Serv., Inc. v. Microsoft Corp*., 413 F.3d 257, 260 (2d Cir. 2005) (internal quotation marks and citation omitted). "The owner of a copyright has the exclusive right to—or to license others to—reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106). "The

---

[4] This is relevant because under Federal Rule of Civil Procedure 45(c), federal courts' power to compel testimony from non-party witnesses is geographically limited. It appears to the Court that key representatives are likely to reside outside a 100-mile radius from the Southern District of New York. *See, e.g.*, ECF No. 216-12 at 2 (KCI employee's email signature with a Naples, Florida address), 216-16 at 6 (SBD employee's email signature with a Decatur, Alabama address); *see also* FAC ¶¶ 9, 11, 15 (stating that KCI is a Florida corporation, SBD is an Alabama-based LLC, and Mosley is a Kentucky-based LLC).

unauthorized reproduction and distribution of a copyrighted work generally infringes the copyright unless such use is specifically protected by the [Copyright] Act." *Tasini v. New York Times Co.*, 206 F.3d 161, 165 (2d Cir. 2000). A license to use the copyrighted work "immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor." *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007).

In addition to direct copyright infringement, there are "two categories of secondary copyright liability, which means liability for the copyright infringement of another": "contributory" and "vicarious" liability. *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 588 (2026). "One infringes contributorily by intentionally inducing or encouraging direct infringement . . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, *Ltd.*, 545 U.S. 913, 930 (2005). Plaintiff only argues contributory, not vicarious liability. *See* Pl. Mem. I at 1. Contributory infringement requires more than a "mere quantitative contribution to the primary infringement," *Espire Ads LLC v. TAPP Influencers Corp*., 655 F. Supp. 3d 223, 258 (S.D.N.Y. 2023) (citation omitted), and "mere knowledge that a service will be used to infringe is insufficient to establish the requisite intent to infringe," *Cox*, 607 U.S. at 594.

2. Damages

"A copyright infringer can be held liable for either actual damages and profits obtained or for statutory damages." *Fischer v. Forrest*, 968 F.3d 216, 220 (2d Cir. 2020) (citing 17 U.S.C. § 504(a)). "However, § 412 [of the Copyright Act] precludes statutory damages or attorneys' fees for 'any infringement of copyright in an unpublished work commenced before the effective date of its registration' or 'any infringement of copyright commenced after first publication of the work and before the effective date of its registration.'" *Id.* (quoting 17 U.S.C. § 412); *see*

*also Fournier v. Erickson*, 202 F. Supp. 2d 290, 298 (S.D.N.Y. 2002) (noting that "infringement commences for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs" (internal quotation marks and citation omitted)). Because the effective date of Plaintiff's copyright registration is April 6, 2024, Pl. 56.1 ¶ 32, Plaintiff is limited to recovering actual damages for infringement beginning before that date, *see generally* Pl. Claims Chart (Plaintiff acknowledging the same).[5] The Supreme Court has held that "when a copyright owner elects to recover statutory damages," "the Seventh Amendment provides a right to a jury trial, which includes a right to a jury determination of the amount of statutory damages." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 342 (1998).

B. Discussion

The parties agree that Plaintiff owns the copyrights in and to the photographs at issue. The Court finds that, with one exception, Defendant is entitled to summary judgment because Plaintiff has not created a genuine dispute of material fact as to Defendant's direct or contributory liability.[6] *See Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 319 (E.D.N.Y. 2014)

---

[5] Neither party addresses whether statutory damages are available under § 412 against a contributory infringer when the alleged contribution to the infringement occurs before the date of registration, but the direct infringement occurs after. However, the Court need not decide the issue in this case.

[6] Because Defendant briefed the issue and does not show prejudice, the Court considers the merits of both Plaintiff's direct and contributory theories of liability, regardless of whether Plaintiff specifically pleaded contributory liability in his complaint. "It is 'well settled that a Court should not on summary judgment consider factual allegations and legal theories not raised in the complaint.'" *Lopez v. Gap*, 883 F. Supp. 2d 400, 413 (S.D.N.Y. 2012) (citation omitted). "The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc); *see also Medina v. Ricardos Mechanical, Inc.*, No. 16 Civ. 1407, 2018 WL 3973007, at *8 (E.D.N.Y. Aug. 20, 2018) (considering whether the complaint provides sufficient facts to "enable the adverse party to answer and prepare for trial . . . and identify the nature of the case" (citation omitted)). Although the amended complaint contains an allegation consistent with contributory liability, *see, e.g.*, *id.* ¶ 51 (stating that Defendant "made Plaintiff's [p]hotographs freely available to other defendants for further copying, publication, and use on their respective websites"), the allegation that follows focuses on direct infringement only, *see id.* ¶ 52 (stating that to the extent Defendant did not "directly" provide the photographs to the retailers, the retailers "knew they were not granted permission" to use and publish the photographs). In general, the amended complaint lacks facts tending to show that Defendant induced or encouraged infringement with the requisite intent to be contributorily liable for the retailers' actions. *See generally* FAC. However, because it is a close case and Defendant briefed the issue, the Court considers both theories.

("Plaintiff's burden at this stage of the proceedings is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that Defendant [is liable].").

1. Paul Simon (Contributory Liability Only)

With respect to the photographs published by Paul Simon, the only evidence Plaintiff submits is that Defendant's Instagram account "liked" a Paul Simon post publishing five of Plaintiff's photographs. *See* Pl. 56.1 ¶ 9. Plaintiff wisely does not claim direct infringement, proceeding only a theory of contributory infringement. He argues that, as evidenced by Defendant's "like," Defendant intended to induce or encourage Paul Simon's infringement.

A reasonable jury could not conclude from Defendant's "like" alone that it intended to induce or encourage Paul Simon's infringement, particularly where Defendant's "like" occurred only after Paul Simon made the infringing social media post and where Plaintiff has presented no evidence about who made the "like" and with what knowledge or intent. *See generally* Pl. 56.1 ¶ 9. In fact, Rieman told Plaintiff, "I did not authorize or provide Paul Simon with any images to post on Instagram. It is very easy to screenshot an image from any site and use it. The internet is a public space in which anyone can access those images. I am not responsible for their actions." Pl. 56.1 ¶ 10. A court cannot "find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." *Cox*, 607 U.S. at 594 (citation omitted). Rather, contributory infringement requires that the defendant "actively encourage[] infringement through specific acts." *Cox*, 607 U.S. at 593 (citation omitted); *see also Grokster*, 545 U.S. at 937 ("[M]ere knowledge of infringing potential or of actual infringing uses would not be enough . . . to subject . . . [the defendant] to [contributory] liability."). Finding no triable

issue on this sparse record, Defendant is entitled to summary judgment on the claims arising from the Paul Simon Instagram post.

2. SBD (Direct and Contributory Liability)

Plaintiff's evidence falls short with respect to the SBD-published photos as well. Plaintiff argues that, at least for certain photos, Defendant directly infringed the photos by downloading and emailing Plaintiff's photographs to SBD. If true, such conduct would exceed the terms of the parties' licensing agreement, which strictly limits use of the photos to Defendant's own website and social media and prohibits distribution of the photographs to third parties. *See* Invoice & Licensing Agreement at 1, §§ 1, 5; *Tasini*, 206 F.3d at 165 ("The unauthorized reproduction and distribution of a copyrighted work generally infringes the copyright unless such use is specifically protected by the [Copyright] Act."). Plaintiff has not, however, produced direct evidence—such as emails, text messages, or deposition testimony—of such distribution. And because the Court does not consider SBD's interrogatory responses, Plaintiff's only evidence with respect to the SBD-published photos is a collection of past emails unrelated to Plaintiff's photographs.

In these emails, Defendant's sales director, Trella, shared Defendant's "lookbook" with SBD and referenced images of Defendant's apparel. *See, e.g.*, ECF No. 216-16 at 2–12; *see also* Pl. 56.1 (providing no evidence with respect to SBD other than SBD's interrogatory responses). This is insufficient to defeat summary judgment. There is no evidence showing that Defendant invariably shared photographs with SBD, such that a jury could reasonably infer that Plaintiff's photographs were shared, nor is there evidence that the licensing agreement Defendant had with prior photographers was similar to the licensing agreement at issue here, such that a jury could reason from a pattern or practice of infringing behavior. A jury may not speculate that

Defendant distributed Plaintiff's photos to SBD in this case merely because Defendant, on a few occasions in the last five years, shared photos with SBD. *See also Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation[,] or conjecture will not avail a party resisting summary judgment." (quotation marks and citation omitted)). Further, there is no evidence that SBD requested that Defendant send SBD Plaintiff's photographs to begin with. A reasonable jury could not rule in favor of Plaintiff on this record.

Plaintiff's claim of contributory liability also fails. There is no record evidence that Defendant induced or encouraged SBD to copy and publish Plaintiff's photographs, and "mere knowledge of infringing potential or of actual infringing uses would not be enough . . . to subject . . . [the defendant] to [contributory] liability." *Grokster*, 545 U.S. at 937. Defendant is, therefore, entitled to summary judgment on the SBD-related claims.[7]

3. KCI (Direct and Contributory Liability)

i. Liability

Plaintiff has shown a triable issue with respect to the six photographs published by KCI. There is evidence that a KCI employee explicitly asked Trella to send her Plaintiff's photographs on May 8, 2023. *See* ECF No. 216-12 ("Hey Tami- Do you have high res advertising quality images from the 11121B blouses in multi stripe pink and multi stripe navy we are getting next month?"). And it is undisputed that these photographs were eventually published on KCI's website. *See* Pl. 56.1 ¶ 22; ECF No. 216-9. Although Plaintiff has introduced no direct evidence

[7] Even if Plaintiff had proven Defendant's liability with respect to the SBD-published photographs, he would not, as he contends, be entitled to statutory damages because he has not shown when the photographs were published. *See Fischer*, 968 F.3d at 220 (requiring the first publication to post-date copyright registration). Plaintiff argues that because he saw forty-two photographs on SBD's website on April 7, 2024 that he had not seen published before, those photographs must have been first published after his April 6 registration. *See* Pl. Mem. I at 18–19. That is wholly speculative—it is at least equally likely that those photographs were published between March 31 (when he last visited SBD's website) and April 6, 2024 (when he registered his copyrights in and to the photographs). Even assuming Defendant's liability, Plaintiff has not presented a triable issue, let alone entitlement, to statutory damages.

that the photographs were transmitted, Defendant has also offered no countervailing evidence that it denied the request or that it refused to provide photographs in the past in response to such requests from KCI. On this record, and in conjunction with evidence of other dealings between Defendant and KCI in which Defendant helped KCI obtain photographs, *see, e.g.*, ECF Nos. 216-11,[8] 216-13, a reasonable jury could find that Defendant more likely than not infringed Plaintiff's copyrights by directly distributing them to KCI or by taking specific steps to encourage KCI's infringement.

ii. Damages

Defendant separately contends that because Plaintiff has not shown entitlement to damages, even if liability is disputed, it is entitled to summary judgment. *See* Def. Mem. I at 12. The Court makes two initial points. First, as Plaintiff concedes, he is not entitled to statutory damages because KCI published the photographs before Plaintiff's copyright registration. *See* Pl. Claims Chart at 2. Plaintiff is, therefore, limited to actual damages. Second, the fact that Plaintiff has settled with KCI does not foreclose recovery from Defendant at this stage. *See* Def. Mem. I at 13 (arguing that any recovery would be impermissible double recovery). Defendant has not shown that Plaintiff's settlement with KCI is necessarily co-extensive with Plaintiff's damages arising from Defendant's own conduct. And, to the extent the settlement and judgment do represent common damages, the Court can always credit the settlement amount against a

[8] For example, Plaintiff introduces emails from February 2024 between a KCI employee and Trella in which Trella tells KCI that Rieman told her that "[KCI] can get [e-commerce images] right from [her] website." ECF No. 216-11. (Plaintiff does not claim, nor is there evidence, that this email exchange related to Plaintiff's photos. *See* Pl. 56.1 ¶ 31; *see generally* Pl. Mem. I, Pl. Mem. II.) Defendant argues that the correct interpretation of this email is that Defendant's "sales representative merely suggested that [photographs of Defendant-]branded apparel can be found on its website" for KCI to look at and not that KCI had the "right to actual use, i.e., copy and paste, any particular images." Def. Mem. I at 5. However, reasonable minds could disagree, and the Court will not resolve those ambiguities on a motion for summary judgment.

judgment, if any, obtained by Plaintiff. *See Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989).

Next, the Court finds that, although the record is thin, Plaintiff has presented admissible evidence from which a jury could calculate damages without speculation or guesswork. To be sure, "[o]utside of the $1,500 license at issue, Plaintiff has identified no [other] licenses, fair-market valuations, or average licensing fees to support [a] claim for actual damages," Def. Mem. I at 5, and Plaintiff concedes that he has not prepared a sales report or revenue projection related to the photographs at issue and has not disclosed an expert on damages, *see* Def. 56.1 ¶ 16. However, as Plaintiff contends, a jury can nonetheless estimate actual damages based on his "own licensing invoice to [Defendant]," which "provides evidence of market value, and thus actual damages, for those [p]hotographs not eligible for statutory damages." Pl. Mem. I at 19.

"[T]he primary measure of [actual damages] is the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1118 (2d Cir. 1986). Although "courts will not allow speculation as to the amount of actual damages suffered," *Sunset Lamp Corp. v. Alsy Corp.*, 749 F. Supp. 520, 522 (S.D.N.Y. 1990) (citation omitted), "the scope of actual damages is not to be 'narrowly focused,'" *id.* (citation omitted), and "should be broadly construed to favor victims of infringement," *On Davis v. The Gap, Inc.*, 246 F.3d 152, 164 (2d Cir. 2001). The Second Circuit recognizes that evaluating actual damages necessarily "require[s] the court to make uncertain estimates" based on counterfactual circumstances. *Id.* at 166–67.

The Court finds that the parties' licensing agreement is a sufficient evidentiary hook to which a jury could tether a damages award. That an award is imprecise does not preclude an award of damages. *See id.* at 164 ("[U]ncertainty will not preclude a recovery of actual damages

if the uncertainty is as to amount, but not as to the fact that actual damages are attributable to the infringement." (quoting 4 *Nimmer on Copyrights* § 14.02[A] at 14–12)); *see also Sygma Photo News, Inc. v. High Soc. Mag., Inc.*, 778 F.2d 89, 95 (2d Cir. 1985) ("Confronted with imprecision in the computation of expenses, the court should err in the side of guaranteeing plaintiff a full recovery."). A jury could treat the $1,500 amount as evidence of what is a fair value for broad website and social media usage rights for a bundle of commercial photographs, and from that, draw an inference about the value of the unauthorized use with respect to the six photographs at issue here. Defendant is free to present arguments about why that sum overstates Plaintiff's actual damages, but such arguments are for a jury to weigh when awarding damages and do not warrant summary judgment in Defendant's favor.

4. Mosley (Contributory Liability Only)

Other than through inadmissible interrogatories, Plaintiff has not put forth evidence of Defendant's conduct or communications in connection with Mosley's publication of his images. *See generally* Pl. 56.1 (relying solely on Mosley's interrogatory response). Plaintiff has, therefore, failed to present a genuine issue of fact—let alone show entitlement to summary judgment—regarding Defendant's alleged contributory copyright infringement. The Court grants summary judgment to Defendant with respect to Mosley's publication of Plaintiff's photographs.

**CONCLUSION**

For the forgoing reasons, Defendant Kal Rieman's motion for summary judgment is GRANTED IN PART and DENIED IN PART and Plaintiff's cross-motion for summary judgment is DENIED. Specifically, Defendant's motion is GRANTED with respect to all claims of copyright infringement except those arising from the photographs on KCI's website.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 177, 178, and 207. By **October 16, 2026**, the parties shall provide the Court with a joint status update as to how they wish to proceed in this case. The status update shall include a request, if any, to participate in a follow-up settlement conference before the Honorable Jennifer Willis. The parties' deadline for a joint pretrial order is stayed absent further order of this Court. *See* Rule V(B), Individual Practices in Civil Cases.

SO ORDERED.

Dated: September 28, 2026
New York, New York

ANALISA TORRES
United States District Judge